**INTERSTATE COMMERCE COMMISSION
v. UNITED STATES ex rel. FT.
DODGE, D. M. & S. R. CO.**

(Court of Appeals of District of Columbia.
Submitted December 8, 1926. Decided
February 7, 1927.)

No. 4505.

Railroads ⊜⇒5½(51)—Interstate Commerce Commission held not required to appoint referees to determine compensation due carrier under guaranty provisions of statute (Transportation Act 1920, § 209 [Comp. St. § 10071¼dd]; Federal Control Act, § 1 [Comp. St. § 3115¾a]).

Interstate Commerce Commission *held* not required to appoint a board of referees to determine the just compensation due a carrier under the guaranty provisions contained in Transportation Act 1920, § 209 (Comp. St. § 10071¼dd), where such carrier had not entered into any agreement with the President, as authorized by Federal Control Act, § 1 (Comp. St. § 3115¾a).

Appeal from Supreme Court of District of Columbia.

Mandamus by the United States, on the relation of the Ft. Dodge, Des Moines & Southern Railroad Company, against the Interstate Commerce Commission. Judgment for relator, and defendant appeals. Reversed and remanded, with instructions to dismiss petition.

P. J. Farrell and E. M. Reidy, both of Washington, D. C., for appellant.

R. B. Fleharty and J. W. Carmalt, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and HATFIELD, Judge of the United States Court of Customs Appeals.

MARTIN, Chief Justice. This is an appeal from a judgment in mandamus entered by the lower court requiring the Interstate Commerce Commission to appoint a board of referees to determine the just compensation due to the Ft. Dodge, Des Moines & Southern Railroad Company, under the guaranty provisions contained in section 209 of the Transportation Act of 1920 (Comp. St. § 10071¼dd). The cause was submitted and decided below upon the pleadings and the exhibits annexed thereto. The Commission appealed. The issue calls for a reference to the Federal Control Act, 40 Stat. 451 (Comp. St. § 3115¾a et seq.), and the Transportation Act, 41 Stat. 464 (Comp. St. § 10071¼dd).

By authority of the Act of Congress approved August 29, 1916, 39 Stat. 645 (Comp. St. § 1974a), the President of the United States assumed control of the railroad systems of the country, including that of the appellee carrier, and under the Federal Control Act of March 21, 1918, these were operated by the President, through the Director General of Railroads. By section 1 of the Federal Control Act the President was authorized to agree with and guarantee to any such carrier making operating returns to the Interstate Commerce Commission, that during the period of federal control it should receive as just compensation an annual sum not exceeding its average annual railway operating income for the three years ended June 30, 1917. The amount of such income was to be ascertained by the Interstate Commerce Commission and certified by it to the President, which certificate was to be conclusive for the purpose of such agreement.

By section 3 of the act it was provided that all claims for just compensation, not adjusted by such an agreement, should, on the application of the President or of any carrier, be submitted to a board of three referees to be appointed by the Interstate Commerce Commission, who should hear evidence and determine the just compensation of the carrier during the federal control period. The President was authorized in such case to enter into an agreement with the carrier upon a basis not in excess of that reported by the board of referees, or, failing such agreement, either the United States or the carrier might file a petition in the Court of Claims for the purpose of determining the amount of such compensation.

The appellee carrier was one of those making operating returns to the Interstate Commerce Commission, and hence qualified to enter into an agreement with the President for just compensation under section 1 aforesaid; but no such agreement was ever entered into by and between the President and the carrier, nor did either party apply to the Interstate Commerce Commission for the appointment of a board of referees, nor was such a board ever appointed. The Interstate Commerce Commission, however, certified to the President the carrier's average annual railway operating income, as ascertained by the Commission, for the three years ended June 30, 1917.

The federal control of railroads was brought to a close by the Transportation Act approved February 28, 1920 (Comp. St. § 10071¼ et seq.). By section 202 of that act the President was authorized as soon as practicable thereafter, to adjust, settle, liquidate, and wind up all matters, including compensa-

tion, and all questions and disputes of whatsoever nature, arising out of or incident to federal control. Under this authority the President came to an agreement with the appellee carrier as to its just compensation for the federal control period, and adjusted and settled its claim according to the finding certified to the President by the Interstate Commerce Commission.

By section 209 of the Transportation Act, Congress in effect tendered to the carriers the privilege of extending the just compensation guaranty aforesaid for a period of six months next after the termination of federal control. The section provides that the United States guarantees to any carrier with which a contract has been made fixing the amount of just compensation under the Federal Control Act, that the railway operating income of such carrier for the guaranty period of six months shall not be less than one-half of the annual compensation named in the contract. And with respect to any carrier entitled to just compensation under the Federal Control Act, with which no such contract was made, it is guaranteed that the railway operating income of such carrier for the guaranty period as a whole shall not be less than one-half of the annual amount estimated by the President as just compensation for it under the Federal Control Act, providing, however, that "if any such carrier does not accept the President's estimate regarding its just compensation, and if in proceedings under section 3 of the Federal Control Act it is determined that a larger or smaller annual amount is due as just compensation, the guaranty under this paragraph shall be increased or decreased accordingly." It is provided by the act that the Interstate Commerce Commission, as soon as practicable after the expiration of the guaranty period, shall ascertain and certify to the Secretary of the Treasury the several amounts necessary to make good the guaranty to each carrier, and the Secretary shall draw warrants in favor of each for the amounts thus determined.

The appellee carrier duly filed its acceptance of the guaranty provisions, and the Commission after the expiration of the guaranty period, found and certified to the Secretary of the Treasury that the amount necessary to make good the guaranty to the appellee carrier equaled the one-half of the amount of the annual railway operating income of the carrier as theretofore certified by the commis-

sion and which was adopted as the basis for the settlement of the carrier's compensation under the Federal Control Act. The appellee objected to this finding, and petitioned the Commission to appoint a board of referees to hear testimony and determine the amount due it under the guaranty provisions. The Commission denied this petition, whereupon the appellee brought its action in the lower court for a writ of mandamus to compel the Commission to appoint such a board. The court granted the writ; hence this appeal.

We think the lower court erred. Since the appellee carrier had not entered into an agreement with the President under section 1 of the Federal Control Act, its right under the guaranty provisions was to have its railway operating income for the guaranty period computed at not less than one-half of the annual amount estimated by the President as just compensation for the carrier under the Federal Control Act. Or if the President's estimate had been either increased or decreased by a decision of a board of referees appointed under that act, the compensation for the guaranty period should be increased or decreased accordingly. The Transportation Act does not authorize the appointment of a board of referees to determine the amount of a carrier's compensation under the guaranty alone. Therefore, since no such board was appointed to review the President's estimate of just compensation under the Federal Control Act, that estimate must be taken as authoritative when determining the amount due under the guaranty.

It is argued that such a ruling has the effect of granting a judicial review of the carrier's just compensation for the federal control period, while denying a like review for the guaranty period. It must be remembered, however, that under the Federal Control Act the President took possession of the carrier's property without its consent, whereas the carrier voluntarily accepted the guaranty tendered by the Transportation Act. Its rights accordingly are limited by the terms of the act. It follows that the petition for the appointment of a board of referees was rightly overruled by the Commission, and the lower court erred in issuing its writ requiring such an appointment.

Its judgment is reversed, with costs, and the cause is remanded, with instructions to dismiss the plaintiff's petition.